

# KEN PAXTON
ATTORNEY GENERAL OF TEXAS

July 13, 2016

The Honorable Charles Schwertner
Chair, Committee on Health and
    Human Services
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

Opinion No. KP-0103

Re: The status of Insurance Code article 21.52B, the Any Willing Pharmacy statute, in light of federal court decisions (RQ-0092-KP)

The Honorable Todd Hunter
Chair, Committee on Calendars
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Dear Senator Schwertner and Representative Hunter:

You each submitted identical requests asking whether article 21.52B of the Texas Insurance Code, known as an "any willing pharmacy" or "any willing provider" ("AWP") statute, is enforceable in light of a 2003 U.S. Supreme Court case, *Kentucky Ass'n of Health Plans, Inc. v. Miller*.[1] Article 21.52B generally prohibits a health insurance policy or managed care plan from excluding a pharmacy as a contract provider if the pharmacy agrees to meet all the conditions required of providers. *See* TEX. INS. CODE art. 21.52B, § 2(a)(2). You tell us that the Texas Department of Insurance ("Department") currently does not enforce article 21.52B based on a 1997 decision by the U.S. Fifth Circuit Court of Appeals that article 21.52B is preempted by the federal Employee Retirement Income Security Act of 1974 ("ERISA"). Request Letter at 1–2; *see also Tex. Pharmacy Ass'n v. Prudential Ins. Co. of Am.*, 105 F.3d 1035, 1042 (5th Cir. 1997). You assert that the U.S. Supreme Court "effectively reversed *Texas Pharmacy Association*" with *Miller* and that, as a result, article 21.52B "is and has been enforceable." Request Letter at 5.

ERISA establishes uniform standards for pension and health plans in private industry. *See generally* 29 U.S.C. §§ 1001–1461. ERISA preempts all state laws that "relate to" an employee benefit plan, *id.* § 1144(a), but saves from preemption state laws which "regulat[e] insurance." *Id.* § 1144(b)(2)(A). In deciding whether article 21.52B regulated insurance so as to fall within the

---

[1]*See* Letter from Honorable Charles Schwertner, Chair, Senate Comm. on Health & Human Servs., to Honorable Ken Paxton, Tex. Att'y Gen. at 1, 3 (Jan. 26, 2016); Letter from Honorable Todd Hunter, Chair, House Comm. on Calendars, to Honorable Ken Paxton, Tex. Att'y Gen. at 1, 3 (Jan. 26, 2016), https://www.texasattorneygeneral.gov/opinion/requests-for-opinions-rqs (collectively, "Request Letter"); *see also Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329 (2003).

preemption savings clause, the Fifth Circuit in *Texas Pharmacy* recited a three-part inquiry: "(1) [w]hether the practice (the statute) has the effect of spreading the policyholders' risk; (2) whether the practice is an integral part of the policy relationship between the insurer and the insured; and (3) whether the practice is limited to entities within the insurance industry." *Texas Pharmacy*, 105 F.3d at 1038 (following the then-current test as articulated by the U.S. Supreme Court). The Fifth Circuit found that article 21.52B did not fall within the savings clause because it was not limited to entities within the insurance industry, noting that article 21.52B also applied to health maintenance organizations (HMOs), preferred provider organizations (PPOs), and other health care organizations. *Id.* Because the statute failed the third element of the savings clause inquiry, the Fifth Circuit concluded that article 21.52B was preempted under ERISA. *Id.* at 1037 (recognizing that the failure to satisfy any one element of the three-part test is dispositive).

Subsequently, in 2003, the U.S. Supreme Court decided *Kentucky Ass'n of Health Plans, Inc. v. Miller*, concerning whether Kentucky's AWP statute was saved from ERISA preemption. 538 U.S. 329 (2003). The *Miller* Court made "a clean break" from the three-part test it had previously used, adopting a simpler test to determine whether a state law regulates insurance for preemption savings purposes. *Id.* at 341–42. The new test provides: "First, the state law must be specifically directed toward entities engaged in insurance. Second . . . the state law must substantially affect the risk pooling arrangement between the insurer and the insured." *Id.* at 342 (citations omitted).

You assert that under the new *Miller* test, article 21.52B would be saved from ERISA preemption, noting certain analysis in *Texas Pharmacy* as support for that conclusion, and that *Texas Pharmacy* is thus "effectively overruled." Request Letter at 3–4. The Department maintains that "[w]hether Art. 21.52B would satisfy the *Miller* test today has no bearing on whether the Fifth Circuit's preemption of the statute remains valid."[2] In the Department's view, article 21.52B remains unenforceable because the Supreme Court in *Miller* did not discuss or vacate *Texas Pharmacy* or otherwise overrule prior precedent. Dep't Brief at 2.

The Fifth Circuit explains that it

> abides by the rule of orderliness, under which a panel of the court cannot overturn a prior panel decision absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court or by our *en banc* court. For a Supreme Court decision to change our circuit's law, it must be more than merely illuminating with respect to the case before the court and must unequivocally overrule prior precedent.

---

[2]*See* Brief from Ms. Norma Garcia, Gen. Counsel, Tex. Dep't of Ins. at 2 (Feb. 22, 2016) (on file with the Op. Comm.) ("Dep't Brief").

*United States v. Boche-Perez*, 755 F.3d 327, 334 (5th Cir. 2014) (internal quotation marks, citations, and alterations omitted). In *Provident Life & Accident Insurance Co. v. Sharpless*, decided a year after *Miller*, the Fifth Circuit applied the new preemption savings test from *Miller* to a Louisiana statute. 364 F.3d 634, 640–41 (5th Cir. 2004). In fact, we find no Fifth Circuit or Texas federal district court case that continues to use the old standard since *Miller* was decided. Thus, it appears that the Fifth Circuit recognizes the *Miller* test as the appropriate standard for analyzing whether a state statute regulates insurance for purposes of ERISA preemption savings.

In addition, the Fifth Circuit has indicated that it might overrule its prior holding in *Texas Pharmacy*. In *Quality Infusion Care, Inc. v. Humana Health Plan of Texas, Inc.*, the court, acting on a claim under ERISA for payment of benefits that was properly analyzed under complete preemption and not conflict preemption, as in *Miller*, stated that "[u]nder *Miller*, [the claimant] is likely correct that [article 21.52B] at issue here would similarly be saved from preemption as presented there."[3] 290 Fed. App'x 671, 681 (5th Cir. 2008); *see also id.* at 682, n.14 (referring directly to the holding in *Texas Pharmacy* and noting that it was "at least called into doubt by *Miller*").[4] It is also possible that a lower court, applying the *Miller* test, could find that article 21.52B is saved from preemption. *See Does 1–7 v. Round Rock Indep. Sch. Dist.*, 540 F. Supp. 2d 735, 749 (W.D. Tex. 2007) (following the "well-settled law" that a district court may recognize when a precedent has been expressly or impliedly overruled by a subsequent Supreme Court decision, in which case "the District Judge is free to disregard circuit precedent that is contrary to the rule pronounced by the court possessing final authority to decide that particular question of law" (internal quotation marks omitted)); *but see id.* (recognizing the equally "well-settled law that if a precedent . . . has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the [lower court] should follow the case which directly controls, leaving to [the binding authority] the prerogative of overruling its own decisions" (internal quotation marks omitted)). Thus, were a court to address the issue today, it would likely conclude that article 21.52B is saved from preemption under ERISA, pursuant to the test set forth in *Miller*.

That said, while the Fifth Circuit applied the *Miller* analysis to other Texas Insurance Code provisions, it has not determined whether its holding in *Texas Pharmacy* regarding article 21.52B is still valid in light of *Miller*. *See Ellis v. Liberty Life Assurance Co.*, 394 F.3d 262, 275–78 (5th Cir. 2004) (reconsidering its previous preemption of articles 21.21 and 21.55 of the Insurance Code in light of *Miller* but finding that they remain preempted). *Miller* itself addressed only the

---

[3]The claim presented in *Miller* was a conflict preemption issue arising from section 514 of ERISA. *See generally Miller*, 538 U.S. 329. As a procedural matter, however, the claim in *Quality Infusion* could not be analyzed in the same way because it depended on an interpretation of an ERISA employee welfare benefit plan, which the court determined brought the claim under the complete preemption provisions of ERISA section 502. *Quality Infusion*, 290 Fed. App'x at 673, 681. *Miller* was thus inapplicable. *Id.* at 681–82.

[4]*Quality Infusion Care, Inc. v. Humana Health Plan of Texas, Inc.* is an unpublished opinion, which is generally not precedent except to show res judicata, collateral estoppel, or the law of the case. *See* 5th Cir. R. 47.5.4. However, "[u]npublished opinions, although not precedential, may be considered persuasive authority." *United States v. Torres-Jaime*, No. 15–40208, 2016 WL 1612762, at *4 (5th Cir. April 21, 2016).

Kentucky AWP statute. Nowhere in the opinion did the *Miller* Court broadly conclude that all states' AWP statutes were saved from preemption, nor did it reference *Texas Pharmacy* or suggest that it was wrongly decided. *Miller* may undermine the reasoning in *Texas Pharmacy*, but it does not overrule it. Nor can *Texas Pharmacy* be overruled simply through speculation as to how the Fifth Circuit would analyze article 21.52B today in light of *Miller*. And while the Attorney General may opine on how a court would decide the issue, this office has no authority to overrule *Texas Pharmacy*. Tex. Att'y Gen. Op. No. GA-0563 (2007) at 6 (recognizing that this office "cannot ignore or overrule a judicial decision" (internal quotation marks omitted)). Thus, we cannot conclude as a matter of law that the holding in *Texas Pharmacy* is automatically overruled by sole virtue of the new test set forth by the U.S. Supreme Court in *Miller*. Unless and until a court affirmatively concludes that the statute is saved from preemption, article 21.52B remains preempted.

If the Fifth Circuit or other court determines that article 21.52B is saved from preemption under ERISA, we consider what effect such a ruling would have on the statute. The Fifth Circuit's ruling did not repeal the statute, nor has the Texas Legislature taken that action. *See Ward v. Chamberlain*, 67 U.S. 430, 442 (1862) ("Courts . . . may construe a legislative provision but they cannot repeal what is expressly enacted."); Request Letter at 2. That the Department has not enforced the statute likewise does not mean that the law is repealed. *See District of Columbia v. John R. Thompson Co.*, 346 U.S. 100, 113–14 (1953) ("The failure of the executive branch to enforce a law does not result in its . . . repeal."). In fact, there is support for the proposition that if a state law remains on the books and has not been repealed when a preemptive mechanism is removed, the law is effective again. In *First Gibraltar Bank, FSB v. Morales*, the Fifth Circuit considered whether portions of a Texas homestead law previously preempted by federal law were effective again when the federal law was amended so as to no longer result in preemption. 42 F.3d 895 (5th Cir. 1995). The court vacated its earlier ruling that the federal law preempted Texas homestead law and proclaimed that

> [b]ecause the Texas homestead laws had not been repealed, they were in effect on the date of the [a]mendment, although they were arguably impotent in the context of federal bank regulation. Once the preemptive mechanism was removed, however, the state homestead provisions—already effective in all other areas—were also effective in the area of federal bank regulation.

*Id.* at 902. Although the preemptive mechanism that changed in *First Gibraltar* was the text of the federal law itself, whereas in this case it is judicial analysis of a federal law, the principle is the same: when an un-repealed state law is no longer federally preempted, it is once again effective. *See id.* (stating that "we cannot agree with [an] apparent assumption that once a law is preempted, it forever remains preempted and ineffective"). Thus, a court would likely conclude that article 21.52B resumes its effectiveness upon a judicial decision that article 21.52B is saved from preemption under ERISA.

## S U M M A R Y

Were a court to address the issue today, it would likely conclude that article 21.52B of the Texas Insurance Code ("Any Willing Pharmacy" statute) is saved from preemption under the federal Employee Retirement Income Security Act of 1974 ("ERISA"), pursuant to the test set forth by the U.S. Supreme Court in *Kentucky Ass'n of Health Plans, Inc. v. Miller*. However, the current Fifth Circuit Court of Appeals decision in *Texas Pharmacy Ass'n v. Prudential Insurance Co. of America*, holding that article 21.52B is preempted under ERISA, still stands. Until a court affirmatively concludes that the statute is saved from preemption, we cannot conclude as a matter of law that article 21.52B is enforceable.

Very truly yours,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

VIRGINIA K. HOELSCHER
Chair, Opinion Committee

BECKY P. CASARES
Assistant Attorney General, Opinion Committee